IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| RYAN S. JAMES | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:16-CV-457-RP-JCM |
| | § | |
| CARLOS H. CASCOS, *Secretary*, | § | |
| *Texas Department of State*, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the court is Plaintiff's Verified Complaint, (Dkt. 1) as well as Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 65(a), (Dkt. 3). Plaintiff, proceeding pro se, challenges the constitutionality of Texas Election Code § 192.005, contending that it violates: (1) Texas Election Law under Title II; (2) his Fourteenth Amendment right to Equal Protection; and (3) Article I, Section 3 of the Texas constitution. (*See generally* Dkt. 1). By way of his Motion for TRO, Plaintiff seeks:

> [To enjoin] Defendant, [his] officers, agents, servants, employees, those persons in active concert or participation with Defendant, and all other persons within the scope of Federal Rule of Civil Procedure 65, from taking any action in furtherance of the election, appointment, awarding, seating or voting of Texas' presidential electors individually, or collectively as a whole pending resolution of . . . [P]laintiff's claims.

(Dkt. 3 at 1–2).

Put another way, Plaintiff seeks to prevent the Texas electors from casting their votes on December 19, 2016, in favor of Donald Trump. (*See, e.g.*, Dkt. 1 at ¶ 13; Dkt. 3 at 3).

### I. LEGAL STANDARD

A TRO is a highly accelerated and temporary form of preliminary injunctive relief. *CompCom Systems, Inc. v. WJ Global, LLC*, No. 3:14-CV-3625-L, 2014 WL 5032747 *2 (N.D. Tex. Oct. 8, 2014)

1

(internal citations omitted). In turn, injunctive relief is an extraordinary remedy, the application of which requires the movant unequivocally show a need for its issuance. *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). The underlying purpose of a TRO is to preserve the status quo, and it should be tailored to restrict a party only so long as it is necessary to prevent irreparable harm. *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

A district court should grant a TRO or preliminary injunction only when the plaintiff establishes the following four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs any damage that the injunction might cause to the non-movant; and (4) that the injunction will not disserve the public interest. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999); *accord Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989). The denial of a preliminary injunction will be upheld where the movant fails to sufficiently establish any one of these four criteria. *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990); *see United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (5th Cir. 1983) (explaining that a preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites" (quoting *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974))).

Additionally, Federal Rule of Civil Procedure 65 provides that a court may issue a TRO without written or oral notice to the adverse party only where:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)–(B).

## II. DISCUSSION

Here, Plaintiff seeks the issuance of a TRO without notice to Defendant. However, with regard to the requirements of Federal Rule of Civil Procedure 65(b), Plaintiff's motion does not demonstrate that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard," nor does it certify in writing why notice to Defendant should not be required. *See id.* Further, even if Plaintiff had at least attempted to satisfy those requirements, his motion otherwise fails to persuade the court that the more general prerequisites for issuance of a preliminary injunction have been met.

Though Plaintiff asserts three separate causes of action in his Complaint,[1] he argues in his application for a TRO only that his 42 U.S.C. § 1983 claim has a substantial likelihood of success on the merits. (Dkt. 3 at 6). Accordingly, because Plaintiff has the burden of introducing sufficient evidence to justify the granting of a TRO, the court limits its analysis to his 42 U.S.C. § 1983 claim, *see PCI Transp., Inc., v. Fort Worth & Western R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005), and for the reasons explained below holds that Plaintiff has failed to meet that burden.

Plaintiff's argument as to the likelihood of success on the merits vis-à-vis his § 1983 claim is as follows:

> The United States Supreme Court has held that, '[t]he right of suffrage is denied by debasement or dilution of a citizens vote in a state or federal election,' in upholding the principle of 'one-person-one-vote.' *See, Reynolds v. Sims*, 377 U.S. 533, 554-555 (1964) (holding that federal equal protection demands 'no less than substantially equal state legislative representation for all citizens. . . .'). Because the [E]lectoral [C]ollege is a representative body just as the state legislature is, the 'winner-take-all' provision of Section 192.005 of the Texas Election Code, does not, on its face, meet the standard known as 'one-person-one-vote' that prevents exactly the type of vote dilution created by § 192.005.

(Dkt. 3 at 8).

---

[1] Plaintiff's three causes of action brought in this suit are: (1) violation of the Texas Elections Code; (2) 42 U.S.C. § 1983; and (3) Article I, Section 3 of the Texas Constitution. *See* Dkt. 1.

3

As an initial matter, the court notes that Plaintiff is *not* challenging the constitutionality of using the Electoral College for presidential elections. Rather, the issue before the court is whether Texas' selection of electors by its "winner-take-all" approach violates the "one person one vote" principle under the Equal Protection Clause of the Fourteenth Amendment. (*See* Dkt. 1 at 7–9). Under a "winner-take-all" system, the state conducts a statewide election, and the candidate who wins the plurality of votes sends their entire slate of electors to the Electoral College. *Schweikert v. Herring*, No. 3:16-CV-00072, 2016 WL 7046845, at *1–3 (W.D. Va. Dec. 2, 2016). Plaintiff argues that this approach effectively deprives persons in Texas who voted for a non-plurality-winning candidate, including himself, of their right to vote. (*See* Dkt. 1). He contends that the electors should be required to cast their votes proportionally so as to reflect the divisions within the popular vote. (Dkt. 1 at 6).

The court finds that it need not address any philosophical or political arguments regarding the justification of the "winner-take-all" approach because it is bound by Supreme Court precedent on this issue. Article II of the United States Constitution establishes the basic parameters by which the President of the United States is elected by the Electoral College, including the grant of considerable discretion to the States in determining how to select their electors. *See Bush v. Gore*, 531 U.S. 98 (2000). Section 1 of the Article leaves to each State's legislature the appointment of electors "in such manner" as it may direct. *Id.*; *accord Schweikert*, 2016 WL 7046845 at *1–3; *see* U.S. Const., art. II., § 1, cl. 2. The Constitution therefore does not provide individual citizens the right to vote for electors for the President of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the Electoral College. *Bush*, 531 U.S. at 104–05; U.S. Const., art. II, § 1.

And, while no Fifth Circuit decision directly addresses the "winner-take-all" system, the issue has been raised and its legitimacy affirmed by a number of lower courts. *See Lowe v. Treen*, 393 So.2d 459 (La. Ct. App. 1980); *Graham v. Fong Eu.*, 403 F. Supp. 37 (N.D. Cal. 1975), *aff'd.* 423 U.S. 1067 (discussing the

uniform and historical practice of states electing presidential electors on a statewide "winner-take-all" basis and upholding the validity of California's "winner-take-all" system). The Supreme Court has also refused to entertain an original suit asking that the Court outlaw the "winner take all" system of casting electoral votes and claiming that the effect of that system was to disadvantage voters in the less populous states. *See Delaware v. New York*, 385 U.S. 895 (1966).

Along those lines, in 1968, a three judge panel unequivocally declared Virginia's system of selecting electors—a "winner-take-all" approach—constitutional. *Williams v. Virginia State Bd. of Elections*, 288 F. Supp. 622 (E.D. Va. 1968) (3 judge court), *aff'd per curiam*, 393 U.S. 320 (1969), *reh'g denied*, 393 U.S. 1112 (1969). The panel, in refuting the argument that the approach is impermissibly discriminatory, held the following:

> In the election of electors the (unit) rule does not in any way denigrate the power of one citizen's ballot and heighten the influence of another's vote. Admittedly, once the electoral slate is chosen, it speaks only for the element with the largest number of votes. This in a sense is discrimination against the minority voters, but in a democratic society the majority must rule, unless the discrimination is invidious.

*Id.*

The *Williams* court thus found the "winner-take-all" approach consistent with the Equal Protection Clause. *See id.* One year later, in a per curiam decision, the United States Supreme Court affirmed the panel's judgment. *Williams*, 393 U.S. 320 (1969).

Finally, and more recently, on December 2, 2016, another Virginia district court faced the same issue addressed in *Williams*. *Schweikert*, 2016 WL 7046845, at *1–3. The court dismissed the case due to the Supreme Court's summary affirmance of *Williams*, finding Virginia's "winner-take-all" approach in selecting presidential electors constitutional. *Id.* The court held that it lacked the authority to reach a conclusion that directly contradicted binding Supreme Court precedent. *Id.*; *see Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (summary affirmances "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.").

This court agrees with the above—that the "winner-take-all" approach is constitutional. The Equal Protection Clause requires only that when an election is held in the delegate selection process, the weight assigned to individual votes cannot depend on: (1) where an individual voter lives; (2) whether an individual belongs to an identifiable racial group; or (3) whether an individual belongs to an identifiable political group. *Graham*, 403 F. Supp. at 49. Here, Plaintiff does not claim discrimination based on any of those three categorizations. Rather, he argues that he is inadequately represented in the Electoral College, not because of his support of a particular candidate, but because the candidate he chose to support lost the election. (*See* Dkt. 1). This, in and of itself, is not a denial of equal protection. *Graham*, 403 F. Supp. at 45. Because Plaintiff fails to show the substantial likelihood of his success on the merits, his Motion for a Temporary Restraining Order and Preliminary Injunction must be denied.

### III. CONCLUSION

For the reasons explained above, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3) is **DENIED.**

**SIGNED** on December 19, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE